UNION STOCK YARDS COMPANY OF OMAHA V. ALBERT
P. LARSON.

FILED NOVEMBER 28, 1893.     No. 5460.

**Master and Servant:** DEFECTIVE APPLIANCES: PERSONAL IN-
JURIES: EVIDENCE: REVIEW.  In an action for personal in-
juries, the only question being the sufficiency of the testimony to
sustain the verdict, and the testimony being ample on every ma-
terial point, the verdict will not be set aside.

ERROR from the district court of Douglas county.
Tried below before KEYSOR, J.

*Charles J. Greene* and *Breckenridge, Breckenridge &
Crofoot,* for plaintiff in error.

*Cowin & McHugh, contra.*

MAXWELL, C. J.

This is an action for personal injuries sustained by the
defendant in error by reason of the alleged negligence of
the plaintiff in error.   The injury is stated in the petition
as follows :

" That he went into the employ of the defendant com-
pany in the year 1888 as a railroad switchman in and
about the yards of the said defendant company and its
tracks in and about South Omaha, and remained in the
employ of the company until the 22d day of November,
1889, as such switchman.   At the latter date, and for some
time before, he was receiving wages from the defendant
company as such switchman, to the amount of from $3.15

to $3.50 per day.  Among other duties devolving upon the plaintiff as such switchman was the coupling and uncoupling of cars, car to and from car, and car to and from engine.  It was the duty of the company in this behalf to furnish suitable cars, engines, and appliances, whereby and wherewith the plaintiff was required to do and perform said services.  On the 22d day of November, 1889, the plaintiff, in the performance of his duty for the defendant, was called and required to uncouple a car from one of the engines of said defendant company, and while attempting to perform the said service his left hand was caught between the top lip of the draw-bar of the engine and the head-pin in the draw-bar on the car, and bruised and crushed the same so that he lost one finger, the second finger, and substantially the use of his left hand, which loss of use of hand is permanent, so that by reason of said injury the plaintiff is permanently disabled to a great extent to perform manual labor; that he suffered by reason of said injury great pain, mental and physical, and that up to the present time he is rendered wholly unable to perform any labor, and that his services were reasonably worth the sum of from $3.15 to $3.50 per day; that he has always performed manual labor for support and is not qualified in any other department to earn a livelihood.  He has incurred large expense in connection with said sickness by incurring doctor bills to the amount of $100; that the said injury was caused wholly by the negligence of the said defendant company, in this: that the draw-head of the engine and the draw-head of the car that were coupled, and which the plaintiff attempted to uncouple, were worn out and defective and unfit for use, and had been so worn out and unfit for service for three months before the injury complained of, and were unfit for use and should have been removed and new ones placed in their stead; and by reason of being thus worn out and defective, the top lip of the draw-head of the engine, when slack was made for

uncoupling, reached back to the pin which had to be removed to make the uncoupling, while, if the said draw-heads had been in reasonably good condition, the draw-head of the engine would not, when slack was made, reach within an inch or an inch and one-half of the coupling pin when in place; and it was by reason of the fact of the draw-head extending back to the coupling pin and coming in contact with it that the said injury resulted. The defects were that the heads of the draw-heads were so worn out and defective as to cause the contact aforesaid, which would not have occurred had they been in reasonable and proper condition; that he did not know of the said defects until immediately after the injury aforesaid, but that before the injury the defendant company did know of such defects, but carelessly and negligently continued to use said appliances; that his injuries as aforesaid were caused wholly by the negligence and carelessness of the said company defendant; and that he, the plaintiff, was free from any and all carelessness, negligence, or blame in the premises."

To the petition the defendant below, after denying certain facts, answered as follows: "For its further answer to plaintiff's petition this defendant states: That the plaintiff was, at or about the time stated, an employe of this defendant and was a switchman in its yards in the city of South Omaha, Nebraska; that if said plaintiff received any injuries of any kind whatsoever while in the employ of this defendant, such injuries were received by and through the carelessness and negligence of the plaintiff and not because of any negligence or carelessness of this defendant. This defendant denies specifically that the draw-bar of the engine mentioned in his petition was defective and worn as therein alleged, and also denies that the draw-bar of the car referred to in plaintiff's petition was defective and worn as therein alleged, but states that the same, and particularly the draw-bar of the engine of the defendant, were in good

condition. That the employment of the plaintiff was in
itself of a dangerous character, and the plaintiff was fully
aware of the dangers incident thereto."

The reply is a general denial. On the trial of the cause
the jury returned a verdict for the defendant in error for
the sum of $3,900, upon which judgment was rendered.

The sole question presented is the sufficiency of the evi-
dence to sustain the verdict. One Anthony Donohue was
called as a witness on behalf of the defendant in error and
testifies as follows:

Q. Did you know the character, the nature and condi-
tions, of the front draw-head of engine No. 1?

A. Yes, sir; I did.

Q. At the time that Mr. Larson was hurt?

A. Yes, sir.

Q. You may state what the condition of that draw-
head was.

A. It was worn out from working towards the hill. It
was worn so that the draw-bar extended out far enough
for the pin to——

Q. How long had it been in that condition?

A. I can't say how long. My attention was called to it
two or three weeks before this man Larson was hurt.

Q. By whom?

A. F. E. Norris.

Q. Under what circumstances?

A. He got his glove caught when he was drawing the
pin, but it didn't happen to catch his hand.

Q. Were you close by there?

A. I was sitting out about fifteen or twenty feet, where
my office was nights.

Q. After he called your attention to it did you examine
the draw-head?

A. Was there. I went out and looked at it.

Q. Who looked at it with you?

A. Well, there was this man Norris and one or two
others.

Q. Did you, Mr. Donohue, say anything to Mr. Shropshire about this?

A. Yes, sir.

Q. When was that?

A. About two or three——

Q. No, with respect to Norris?

A. The next morning.

Q. What did you say to Shropshire about the draw-bar on No. 1?

A. I told him it would take the hand off of some one. I don't know just what I told him, but told him about the draw-bar being worn out and would catch somebody.

Donohue was the foreman of the night force in the yards, and he testifies that he informed Shropshire, the overseer of the yards, of the defective draw-head, and he is amply corroborated. So upon every other point in the case. It was one proper to submit to a jury, and the finding is suppported by ample evidence. There is no material error in the record and the judgment is

AFFIRMED.